# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**MICHAEL RUSSELL**                                                                                          **PLAINTIFF**

**V.**                              **NO. 4:21CV00271 LPR-PSH**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER of the**
**SOCIAL SECURITY ADMINISTRATION**[1]                              **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States District Judge Lee P. Rudofsky. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I. Introduction:**

On September 25, 2017, Michael Russell filed a Title II application for disability and disability insurance benefits. (Tr. at 16). On the same day, he filed a

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

Title XVI application for supplemental security income. *Id*. In both applications, Mr. Russell alleged disability beginning on May 10, 2017. *Id*. In a May 21, 2019 written decision, an administrative law judge (ALJ) denied both applications. (Tr. at 27). The Appeals Council denied Mr. Russell's request for review on February 2, 2021. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Mr. Russell has requested judicial review.

For the reasons stated below, the Court should affirm the Commissioner's decision.

## II. The Commissioner's Decision:

The ALJ found that Mr. Russell had not engaged in substantial gainful activity since the alleged onset date of May 10, 2017.[2] (Tr. at 18). At Step Two, the ALJ found that Mr. Russell had the following severe impairments: disorder of the back, osteoarthritis, chronic obstructive pulmonary disease (COPD), and mood disorder with anxiety. *Id*.

After finding that Mr. Russell's impairments did not meet or equal a Listing (Tr. at 19), the ALJ determined that Mr. Russell had the residual functional capacity

---

[2] The ALJ followed the required five-step analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment (Listing); (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

(RFC) to perform work at the light exertional level, with additional limitations: (1) he can no more than occasionally stoop, crouch, climb or balance; (2) he may tolerate exposure to concentrated amounts of respiratory irritants, such as dust, fumes, strong odors, or extreme changes in temperature or humidity; (3) he is limited to semi-skilled work; (4) he can perform work where interpersonal contact is routine, but superficial, and the complexity of tasks is learned by experience, involves several variables, and uses judgment within limits; and (5) the supervision required for the job is little for routine, but detailed for non-routine tasks. (Tr. at 20).

The ALJ next found that Mr. Russell was unable to perform any of his past relevant work. (Tr. at 25). At Step Five, the ALJ relied on the testimony of a Vocational Expert (VE) to find that, considering Mr. Russell's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could perform. (Tr. at 25-27). Therefore, the ALJ found that Mr. Russell was not disabled. *Id*.

### III.   Discussion:

#### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); see

also 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

B.   Mr. Russell's Arguments on Appeal

Mr. Russell argues that the evidence supporting the ALJ's decision to deny benefits is less than substantial. Specifically, he contends that the ALJ did not

properly evaluate the medical opinions, and that he failed to include credible limitations in the RFC.

Mr. Russell alleged that he had trouble sitting and walking due to back pain. (Tr. at 70-75). He had fusion surgery in 1998, but recent treatment for his back was conservative, and he admitted at the hearing that he had not had lumbar steroid injections in some time. (Tr. at 22, 73-74). Mr. Russell did exhibit a positive straight-leg raise and an antalgic gait at a consultative examination in February 2018, but he also demonstrated that he could stand and walk without assistive devices, and he could squat or rise from a squatting position. (Tr. at 330-335). Mr. Russell's reflexes and muscle strength were normal. *Id*. Range of motion in Mr. Russell's back was normal. *Id*. X-rays showed only degenerative changes. *Id*. No doctor placed any restrictions on Mr. Russell due to back pain.

X-rays of Mr. Russell's right knee showed mild narrowing of the medial compartment, and Mr. Russell said that injections in his knee gave him some relief. Id.; (Tr. at 73-74). Treatment for knee pain was sporadic and conservative.

Mr. Russell used an inhaler in conjunction with his COPD diagnosis. (Tr. at 70-71). However, he admitted that he did not need portable oxygen or have to go to the emergency room for problems breathing. (Tr. at 22, 70, 76). Review of Mr. Russell's lungs in 2018 showed decreased breath sounds and air movement, but he

had no wheezing. (Tr. at 21-22, 332). And a heart exam was normal. *Id*. Moreover, Mr. Russell admitted he could do things like care for his dog, take his grandchildren out to eat, shop in stores, prepare simple meals, and do light chores. (Tr. at 208-214). He could also drive and deer hunt. *Id*. Such daily activities undermine his claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

Mr. Russell claims that his anxiety was disabling. But, he was not seeing a psychiatrist at the time of the hearing, and he did not require inpatient hospitalization for his condition. (Tr. at 76-77). Samuel Hester, Ph.D. examined Mr. Russell in August 2018, and he found that his thought process was logical and he was alert and fully oriented. (Tr. at 356-360). Mr. Russell performed well on the mental acuity examination. *Id*. Dr. Hester wrote that Mr. Russell could attend to and sustain concentration on basic tasks and sustain persistence in completing tasks. *Id*.

Tracy Phillips, D.O., filled out a medical source statement in February 2019. She opined that, due to degenerative joint disease, COPD, and anxiety disorder, Mr. Russell would be off task 20% of the workday and miss two days of work per month. (Tr. at 364-367). All in all, her opinion gave the impression that Mr. Russell would not be able to perform in the competitive workforce. *Id*. Mr. Russell contends that the ALJ erred by not specifically incorporating the "off-task and days missed" portions of Dr. Phillips' statement into the RFC, and he states that the ALJ's review

6

of Dr. Phillips' opinion was incomplete.

On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules, with an effective date of March 27, 2017, focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)-(c)(2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1-2) (2017). *See Phillips v. Saul*, 2020 U.S. Dist. LEXIS 110370, No 1:19-CV-00034-BD, at *4 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*.

ALJs are required to explain their decisions as to the two most important factors: supportability and consistency. 20 C.F.R. 404.1520(b)(2). These requirements are meant to provide individuals with a better understanding of the Commissioner's decision and provide sufficient rationale for a reviewing adjudicator or court. *Phillips*, *supra*; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01 at 5854, 5858 (January 18, 2017).

In this case, the ALJ fully analyzed Dr. Phillips' opinion. He found portions of it persuasive based on consistency with the evidence of record, and pointed out that Dr. Phillips' "lift/carry limitations are consistent with the abnormal imaging of the lumbar spine and knees, and lumbar muscle spasm." (Tr. at 23-24). The ALJ referenced Mr. Russell's observed antalgic gait and positive straight-leg raise in finding that Dr. Phillips' limitation to standing and walking six hours in an eight-hour workday was persuasive. *Id*. The ALJ also found persuasive Dr. Phillips' statements about limited exposure to environmental irritants. *Id*. But the ALJ found the expression that Mr. Russell would be off-task 20% of the workday unpersuasive given relatively normal functional exams.

Mr. Russell finds the ALJ's analysis to be insufficient. He claims that the ALJ did not fully explain his findings, and that he should have accounted for the "off-task" limitation in the RFC. An ALJ is free to adopt portions of a doctor's opinion and discount others. *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000); *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). Moreover, he may decline to incorporate opinions that are simply on a checkbox form with little elaboration (like that of Dr. Phillips). *Thomas v. Berryhill*, 881 F.3d 672, 675-676 (8th Cir. 2018).

Additionally, Dr. Phillips admitted that he had only seen Mr. Russell for six months, and only four times in that span. (Tr. at 364). This limits the persuasiveness

of the opinion, based on the factors associated with evaluating medical opinions. Finally, Mr. Russell's argument consists of a recitation of his subjective complaints, but functional limitations must have a basis in the medical evidence and are not established based solely on a claimant's statement of symptoms. 20 C.F.R. §§ 404.1508, 416.908; *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004). The ALJ properly considered Dr. Phillips' opinion, and incorporated only those limitations he found credible into the RFC.

Mr. Russell also alleges that the ALJ should have asked the VE about Dr. Phillips' suggestion that Mr. Russell would miss two days of work per month. The Eighth Circuit has held that any alleged impairments properly rejected by an ALJ as untrue or unsubstantiated need not be included in a hypothetical question. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001). The benign medical record did not convince the ALJ, nor does it convince the Court, that Mr. Russell would miss two days of work per month. Treatment was sporadic and conservative, and Mr. Russell could perform a variety of daily activities, which suggests that he is not as impaired as he alleges.

For many of the same reasons, the Court finds no error with respect to the ALJ's handling of Dr. Hester's opinion. Although Dr. Hester opined that Mr. Russell *may not* be able to complete work tasks within an acceptable time frame, the ALJ

9

did not add that to the RFC (emphasis added). (Tr. at 356-360). Again, an ALJ need not adopt a medical opinion line by line, even if he finds parts of it to be persuasive. Dr. Hester found only a few mental function limitations based on his clinical examination, and the ALJ found this to be persuasive. (Tr. at 25). He also clearly gave credit to Mr. Russell's allegations of psychological limitations because he included some mental restrictions in the RFC. (Tr. at 20). An ALJ's review is based on the record as a whole, and he need not weigh and discuss every single piece of evidence. If his decisions are supported by the record, he has done his job.

## VI. Conclusion:

There is substantial evidence to support the Commissioner's decision that Mr. Russell was not disabled. The RFC fully incorporated Mr. Russell's credible limitations and the ALJ properly analyzed the medical opinions. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 29th day of March, 2022.

_____
UNITED STATES MAGISTRATE JUDGE